# Exhibit A

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

October 15, 2025

Melissa Golden
Lead Paralegal and FOIA Specialist
Office of Legal Counsel
Room 5517, 950 Pennsylvania Avenue, N.W.
Department of Justice
Washington, DC 20530-0001

U.S. Department of State
Information Access Liaison Office, A/SKS/IAP/IAL
2201 C Street N.W., Suite B266
Washington, D.C. 20520-0000

OSD/JS FOIA Requester Service Center
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

**Re:** **<u>Request Under Freedom of Information Act (Expedited Processing and Fee Waiver Requested)</u>**

To Whom It May Concern:

This is a request for records under the Freedom of Information Act (FOIA). Through this request, the ACLU[1] and the Center for Constitutional Rights (CCR) (collectively, Requesters) seek (1) the President's July 2025 "directive" to the Department of Defense authorizing the use of military force against Latin American drug cartels the executive branch deems to be "terrorist organizations"; (2) the recent Office of Legal Counsel (OLC) opinion concluding that the President has the authority to order lethal strikes against drug cartels, including those that have

[1] The term "ACLU" refers collectively to the American Civil Liberties Union Foundation and the American Civil Liberties Union. The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues across the country. The American Civil Liberties Union is a separate, non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.



125 Broad Street, Floor 18, New York, NY 10004

not been designated as "terrorist organizations," as well as individuals "affiliated" with such cartels; and (3) any unclassified summaries of either document.

## I. Background

Since early September, President Trump has ordered lethal strikes against five private vessels traveling in international waters, reportedly killing at least twenty-seven people.[2] Although President Trump has characterized the victims of these attacks as "terrorists," all publicly available information—including the Trump administration's own disclosures—indicates that the strikes' victims were civilians who were merely suspected of smuggling drugs.[3] For this reason, members of Congress from across the political spectrum,[4] former government officials who served in presidential administrations of both parties,[5] civil society organizations,[6]

---

[2] *See* Charlie Savage, *Trump, Drug Cartels, Venezuela and War: What We Know*, N.Y. Times (Oct. 6, 2025), https://www.nytimes.com/2025/10/06/us/politics/trump-cartels-what-we-know.html; Charlie Savage, *U.S. Military Kills Another 6 People in 5th Caribbean Strike, Trump Says*, N.Y. Times (Oct. 14, 2025), https://www.nytimes.com/2025/10/14/us/politics/trump-drugs-boat-attack.html.

[3] *See, e.g.*, Natasha Bertrand & Zachary Cohen, *Senior Democrat Says Pentagon Didn't Present Conclusive Evidence Alleged Drug Smugglers Killed in Strike Were Gang Members*, CNN (Sep. 11, 2025), https://www.cnn.com/2025/09/11/politics/senior-democrat-pentagon-strike-gang-members-evidence.

[4] *See, e.g.*, Rep. Ilhan Omar, *Rep. Omar's Statement on Trump's Unconstitutional Military Strike on Vessel in Caribbean* (Sep. 4, 2025), https://omar.house.gov/media/press-releases/rep-omars-statement-trumps-unconstitutional-military-strike-vessel-caribbean; Sen. Rand Paul, *The Constitution Does Not Allow the President To Unilaterally Blow Suspected Drug Smugglers to Smithereens*, Reason (Oct. 8, 2025), https://reason.com/2025/10/08/the-constitution-does-not-allow-the-president-to-unilaterally-blow-suspected-drug-smugglers-to-smithereens.

[5] *See, e.g.*, Marty Lederman, *The Many Ways in Which the September 2 Caribbean Strike was Unlawful … and the Grave Line the Military Has Crossed*, Just Security (Sep. 10, 2025), https://www.justsecurity.org/120296/many-ways-caribbean-strike-unlawful/; Brian Finucane, *Legal Issues Raised by a Lethal U.S. Military Attack in the Caribbean*, Just Security (Sep. 3, 2025), https://www.justsecurity.org/119982/legal-issues-military-attack-carribean/; John Yoo, *A Military Campaign Against the Drug Trade Would Be Unconstitutional*, Wash. Post (Sep. 23, 2025), https://www.washingtonpost.com/opinions/2025/09/23/trump-boat-strikes-drug-cartels-venezuela/.

[6] *See, e.g.*, New York City Bar Ass'n, *Unlawful Attacks on Venezuelan Vessels* (Oct. 6, 2025), https://www.nycbar.org/press-releases/unlawful-attacks-on-venezuelan-vessels/; Human Rights Watch, US: Maritime Strikes Amount to Extrajudicial Killings (Sep. 18, 2025), https://www.hrw.org/news/2025/09/18/us-maritime-strikes-amount-to-extrajudicial-killings.



125 Broad Street, Floor 18, New York, NY 10004

and international bodies[7] have concluded that these strikes appear to have violated international and domestic law.

Notwithstanding this broad consensus, the Trump administration claims that these strikes were lawful. In a September 4 letter to Congress, President Trump asserted that one such strike was conducted "in self-defense" against "affiliate[s]" of an unidentified "designated terrorist organization" pursuant to the President's "constitutional authority as Commander in Chief"[8]—even though the Department of Defense reportedly was unable to confirm the victims' identities and acknowledged to the Senate Armed Services Committee that the targeted vessel had "turned around" before it was bombed.[9] In an October 2 notice to Congress, the Trump administration went further, stating that the President has "determined" that "drug cartels" who have been "designated" as "terrorist organizations" are also "non-state armed groups" whose "actions constitute an armed attack against the United States" and whose "affiliate[s]" are "unlawful combatants" against whom he may authorize the use of lethal force.[10] These assertions of authority are also consistent with those reportedly set forth in a July 2025 presidential directive to the Department of Defense authorizing the use of military force "against certain Latin American drug cartels that [the Trump] administration has deemed terrorist organizations."[11]

Recent reporting indicates that OLC has memorialized an even more sweeping understanding of the President's authority to order lethal strikes against suspected drug traffickers. According to CNN, an OLC legal opinion "argues that the president is allowed to authorize deadly force against a broad range of cartels," including "those the administration has [not] publicly designated as terrorist organizations."[12] This opinion thus "appears to justify an

[7] *See* U.N. Human Rights Office of the High Commissioner, *US War on "Narco-terrorists" Violates the Right to Life, Warn UN Experts After Deadly Vessel Strike* (Sep. 16, 2025), https://www.ohchr.org/en/press-releases/2025/09/us-war-narco-terrorists-violates-right-life-warn-un-experts-after-deadly.

[8] Letter from President Donald Trump to Hon. Charles Grassley, President pro tempore of the Senate (Sep. 4, 2025), https://warpowers.lawandsecurity.org/reports/20250904a/.

[9] *See supra* note 3.

[10] Marty Lederman, *Legal Flaws in the Trump Administration's Notice to Congress on "Armed Conflict" with Drug Cartels*, Just Security (Oct. 3, 2025), https://www.justsecurity.org/121844/trump-notice-drug-cartels/ (reproducing the notice).

[11] Helene Cooper, Maggie Haberman, Charlie Savage and Eric Schmitt, *Trump Directs Military to Target Foreign Drug Cartels,* N.Y. Times (Aug. 8, 2025), https://www.nytimes.com/2025/08/08/us/trump-military-drug-cartels.html.

[12] Natasha Bertrand & Zachary Cohen, *Exclusive: Classified Justice Department opinion authorizes strikes on secret list of cartels, Sources Say*, CNN (Oct. 6, 2025), https://www.cnn.com/2025/10/06/politics/classified-justice-department-memo-cartel-strikes.

open-ended war against a secret list of groups, giving the president power to designate drug traffickers as enemy combatants and have them summarily killed without legal review."[13] On October 7, 2025, Charles Young, who has been nominated to serve as the U.S. Army's general counsel, acknowledged the existence of this opinion in a colloquy with Senator Jeanne Shaheen, explaining that the "opinion was derived through an interagency lawyers working group with the CIA, the State Department, White House counsel, Department of Justice, Department of Defense general counsel, [and the] chairman's legal uniformed judge advocates."[14]

Because the public is entitled to know the full extent of the President's asserted authority to summarily kill suspected drug smugglers, this opinion and the related July 2025 presidential directive must be disclosed. OLC opinions are "treated as conclusive and binding within the executive branch."[15] Given that OLC's opinion and the President's July 2025 directive appear to, as Senator Chris Coons observed, lack any "limiting principle" and could be used to justify the extrajudicial killing of "people [the President] just declares are cartel members, as well as unlawful combatants, inside the United States, or if they were American citizens," the contents of these documents are of the utmost public concern.[16]

## II. Requested Records

We request records created from January 20, 2025, to the present, falling within the following categories:

1. The OLC final opinion concerning the President's authority to order lethal strikes against drug cartels;

2. President Trump's July 2025 directive to the Department of Defense authorizing the use of military force against Latin American drug cartels deemed to be terrorist organizations; and,

[13] *Id.*

[14] *Id.*

[15] Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1305 (2000) (stating that OLC's views "on the question of the legality of a proposed executive branch action . . . are typically treated as conclusive and binding within the executive branch."); S. Rep. No. 110-528, at 2 ("An opinion issued by OLC is not just a piece of legal advice, such as the advice individuals or corporations might solicit from their lawyers. An OLC opinion binds the entire executive branch, just like the ruling of a court.").

[16] PBS NewsHour, *WATCH: Sen. Coons Questions Attorney General Pam Bondi on Prison Reform, Public Safety Funding Cuts* (Oct. 7, 2023), https://www.youtube.com/watch?v=oqFCwN8kdpo.



125 Broad Street, Floor 18, New York, NY 10004

ACLU
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

3. Any unclassified summaries of the two above documents.

* * *

A record is responsive to this request if it is substantially encompassed by one of the descriptions above, notwithstanding minor discrepancies in date or title, and regardless of whether it is styled an "opinion," "memorandum," "memorandum opinion," "directive," "guidance," or something else.

Please provide responsive electronic records electronically, in their native file format.[17] If that is not possible, please provide responsive records electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession. Either way, please provide responsive records in separate, Bates-stamped files.

## III. Application for Expedited Processing

Requesters seek expedited processing.[18] This request satisfies the statutory criteria for expedited processing because it seeks records "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity."[19]

### A. The ACLU and CCR are organizations primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.

The ACLU is "primarily engaged in disseminating information" within the meaning of FOIA.[20] Obtaining information about government activity, analyzing it, publishing it, and widely disseminating it to the press and public are critical and substantial components of the ACLU's work; indeed, they are among its primary activities.[21] The ACLU plans to analyze, publish, and

---

[17] *See* 5 U.S.C. § 552(a)(3)(B).

[18] *See* 5 U.S.C. § 552(a)(6)(E); *see also* 6 C.F.R. § 5.5(e).

[19] *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

[20] *See id.*; *see also* 6 C.F.R. § 5.5(e)(1)(ii).

[21] *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). Courts have found that the ACLU and other organizations with similar missions that engage in information-dissemination activities like the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD,* 241 F. Supp. 2d 5, 11 (D.D.C. 2003).



125 Broad Street, Floor 18, New York, NY 10004

ACLU
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

CENTER FOR
CONSTITUTIONAL
RIGHTS

disseminate to the public the information gathered through this request. It does not seek the requested records for commercial use, and it intends to disseminate the information disclosed as a result of this request to the public at no cost.

The ACLU regularly publishes the *ACLU* magazine, which reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 1 million donors. The ACLU also publishes regular updates and alerts via email to millions of subscribers (both ACLU members and non-members). These updates are additionally broadcast to millions of social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[22] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[23]

The ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[24] The ACLU also regularly publishes books, "know

[22] *See, e.g.*, Press Release, ACLU, Government Releases New Court Opinions Highlighting Further Abuse of Warrantless FISA Surveillance Program (July 21, 2023) (here); Press Release, ACLU, New Records Detail DHS Purchase and Use of Vast Quantities of Cell Phone Location Data (July 18, 2022) (here); Press Release, ACLU, ACLU Files FOIA Request Seeking Records Related to Detained Immigrants' Ability to Access Counsel (December 17, 2021) (here); Press Release, ACLU, ACLU Files FOIA Request to Uncover COVID Impact and Cost of Federal Executions (August 6, 2022) (here); Press Release, ACLU, New Records Detail How the FBI Pressures Police to Keep Use of Shady Phone Surveillance Technology a Secret (June 22, 2023) (here); Press Release, ACLU, ACLU Announces Major Settlement in Family Separation Lawsuit (October 16, 2023) (here).

[23] *See, e.g.*, Corin Faife, *Feds Are Tracking Phone Locations With Data Bought From Brokers*, The Verge (July 18, 2022) (here); Jessica Votipka, *ACLU Files Suit Against Grand Island School That Ended High School Newspaper*, Journal Star (Mar. 31, 2023) (here); Charlie Savage, *N.S.A. Gathered Domestic Calling Records It Had No Authority to Collect*, N.Y. Times (June 26, 2019) (quoting ACLU attorney Patrick Toomey) (here); Rachel Frazin, *ACLU Sues FBI Over Black Activist Surveillance Records*, The Hill (Mar. 21, 2019) (quoting ACLU attorney Nusrat Choudhury) (here); Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, The Intercept (Feb. 8, 2017) (quoting ACLU attorney Hugh Handeyside) (here).

[24] *See, e.g.*, ACLU, *Bad Trip: Debunking the TSA's 'Behavior Detection' Program* (Feb. 2017) (here); Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site,* ACLU: News & Commentary (Nov. 22, 2016) (here); Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most*, ACLU: News &



125 Broad Street, Floor 18, New York, NY 10004

your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog on which it posts original editorial content reporting on and analyzing civil rights and civil liberties news.[25] The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features.[26] The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, including analysis about case developments and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.[27]

---

Commentary (Aug. 8, 2016) (here); ACLU, *Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative*, ACLU: Research & Analysis (May 5, 2016) (here); Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida*, ACLU: News & Commentary (Feb. 22, 2015) (here); Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights,* ACLU: News & Commentary (Oct. 30, 2015) (here); Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333*, ACLU: News & Commentary (Oct. 30, 2014) (here).

[25] *See* ACLU: News & Commentary (here).

[26] *See* ACLU: Multimedia (here).

[27] *See, e.g., ACLU v. ODNI—FOIA Lawsuit Seeking Records About Government Surveillance Under the USA Freedom Act*, ACLU Case Page (last updated Sept. 14, 2023) (here); *ACLU v. DOJ—FOIA Lawsuit Seeking Information on Federal Agencies' Surveillance of Social Media*, ACLU Case Page (last updated Apr. 8, 2024) (here); *ACLU v. DOJ—FOIA Case for Records Relating to Targeted Killing Law, Policy, and Casualties*, ACLU Case Page (last updated Apr. 23, 2019) (here); *Executive Order 12,333—FOIA Lawsuit*, ACLU Case Page (last updated Dec. 3, 2018) (here); *ACLU v. United States*, ACLU Case Page (here); *ACLU v. DOJ—FOIA Lawsuit Demanding OLC Opinion "Common Commercial Service Agreements"*, ACLU Case Page (last updated Apr. 6, 2016) (here); *FOIA Request for Justice Department Policy Memos on GPS Location Tracking*, ACLU Case Page (last updated Mar. 12, 2024) (here); *Florida Stingray FOIA*, ACLU Case Page (last updated Feb. 22, 2015) (here); Nathan Freed Wessler, *ACLU-Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida,* ACLU: News & Commentary (Feb. 22, 2015) (here).

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

The ACLU website includes many features on information obtained through FOIA. The ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of its contents relating to government policies on rendition, detention, and interrogation.[28] The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through FOIA.[29]

CCR is a non-profit, public interest legal and advocacy organization that engages in the fields of civil and international human rights. CCR's diverse issue areas include litigation and advocacy around militarism, mass incarceration and prisoners' rights, racial justice and the protection of human rights defenders and the right to dissent. CCR's Open Records Project files numerous FOIA requests related to these issues, often litigates those requests in court, and has released thousands of pages of documents produced via those requests over the past decade.

CCR's primary and regular activities include the publication of newsletters, know-your-rights handbooks, legal analysis of current human rights issues, and other similar materials for public dissemination. Records received through FOIA requests have served as the basis for a number of these materials, and are available via CCR's Development, Communications, and Advocacy Departments, as well as CCR website, http://ccrjustice.org and social media channels. CCR staff members often serve as sources for journalists and national media outlets, including on issues related to international human rights, war crimes, the War on Terror, detention practices, and abusive practices against refugees, asylum seekers, and immigrants, among others. CCR regularly issues press releases, has an active social media presence with tens of thousands of followers, and also issues regular email updates sent to over 50,000 supporters about developments and news pertaining to CCR's work.

**B. The records sought are urgently needed to inform the public about actual or alleged government activity.**

The records sought are urgently needed to inform the public about actual or alleged government activity.[30] As noted in Part I, *supra*, the requested records will provide the public with critical insight into the full extent of the President's asserted authority to summarily kill

[28] *The Torture Database*, ACLU Database (here); *see also Countering Violent Extremism FOIA Database*, ACLU Database (here); *TSA Behavior Detection FOIA Database*, ACLU Database (here); *Targeted Killing FOIA Database*, ACLU Database (here).

[29] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009) (here); *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU (Nov. 29, 2010) (here); *Statistics on NSL's Produced by Department of Defense*, ACLU (here).

[30] *See* 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

suspected drug smugglers. Such insight is especially necessary given recent statements indicating that the U.S. government may soon use lethal force against suspected drug smugglers or so-called "terrorists" in places other than on the high seas, including President Trump's statement that future strikes may occur on "land,"[31] Secretary of Defense Pete Hegseth's claim that "[i]f you're north of Venezuela and you want to traffic drugs to the United States, you are a legitimate target,"[32] and Attorney General Pamela Bondi's statement that the Trump administration intends to "take the same approach" with "Antifa"—which the administration has called a "domestic terrorist organization"—as it "did with cartels."[33] Moreover, courts have concluded that requests for similar records implicate "important issues" concerning "the public's opportunity to obtain information about their government's" asserted legal authority to engage in "targeted killings."[34]

## IV. Application for Waiver or Limitation of Fees

Requesters seek a waiver of document search, review, and duplication fees because disclosing the requested records is in the public interest, "likely to contribute significantly to public understanding of the operations or activities of the government," and "not primarily in the commercial interest of" the ACLU or CCR.[35]

Additionally, Requesters seek a waiver of search fees on the grounds that the ACLU and CCR qualify as "representative[s] of the news media" and the records are not sought for commercial use.[36]

### A. The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU or CCR.

---

[31] *Trump Says US Hit Another Boat Off Venezuela Coast on Saturday*, Reuters (Oct. 5, 2025), https://www.reuters.com/world/us/trump-says-us-hit-another-boat-off-venezuela-coast-saturday-2025-10-05/.

[32] Aishvarya Kavi, *Trump Calls Deadly Strikes on Boats in Caribbean an 'Act of Kindness,'* N.Y. Times (Oct. 5, 2024), https://www.nytimes.com/2025/10/05/us/politics/trump-caribbean-strikes-drugs-kindness.html.

[33] Betsy Klein & Donald Judd, *Trump Takes Aim at Antifa — and the Press — in White House Roundtable*, CNN (Oct. 8, 2025), https://www.cnn.com/2025/10/08/politics/antifa-white-house-roundtable.

[34] *See, e.g.*, *New York Times Co. v. U.S. Dep't of Just.*, 756 F.3d 100, 103 (2d Cir.), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014).

[35] 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 6 C.F.R. § 5.11(k)(1).

[36] 5 U.S.C. § 552(a)(4)(A)(ii)(II).



125 Broad Street, Floor 18, New York, NY 10004

This request seeks OLC's final opinions and memoranda concerning the President's authority to order lethal strikes against drug cartels and their affiliates, including on U.S. soil against U.S. persons. Accordingly, there can be no question that the records' release would contribute significantly to public understanding of the operations or activities of the government.

As stated above, any information disclosed by the ACLU or CCR as a result of this request will be available to the public at no cost. Disclosing the requested records is not "primarily in the commercial interest" of Requesters; nor does the ACLU or CCR intend to put the requested records to "commercial use."[37] Thus, granting a fee waiver would be consistent with Congress's intent. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters.") (quotation marks omitted).

**B. The ACLU and CCR are representatives of the news media and the records are not sought for commercial use.**

Requesters meet the statutory and regulatory definitions of "representative[s] of the news media" because both are an "entity that gathers information of potential interest to a segment of the public" and that "uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); 6 C.F.R. § 5.11(b)(6).[38] Accordingly, fees associated with responding to FOIA requests are regularly waived for the ACLU and CCR.[39]

---

[37] 5 U.S.C. § 552(a)(4)(A)(iii); *id.* § § 552(a)(4)(A)(ii)(II).

[38] *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information").

[39] For example, in June 2018, the U.S. Citizenship and Immigration Services granted a fee-waiver request regarding a FOIA request for documents relating to the use of social media surveillance. In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In June 2017, the Department of Defense granted a fee-waiver request regarding a FOIA request for records pertaining to the authorities approved by President Trump in March 2017 which allowed U.S. involvement in Somalia. In June 2017, the Department of Defense, the CIA, and the Office of Inspector General granted fee-wavier requests regarding a FOIA request for records pertaining to U.S.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

Courts have likewise found other organizations whose mission, function, publishing, and public education activities are similar in kind to Requesters to be "representatives of the news media." *See, e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[40]

As stated above, neither the ACLU nor CCR seeks the requested records for commercial use.

*        *        *

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Jeffrey Stein
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
jstein@aclu.org

involvement in the torture of detainees in prisons in Yemen, Eritrea, and aboard Yemeni or Emirati naval vessels. In May 2017, CBP granted a fee-waiver request regarding a FOIA request for documents related to electronic device searches at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests in relation to a FOIA request for records related to the legal authority for the use of military force in Syria. In March 2017, the Department of Defense Office of Inspector General, the CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for documents related to the January 29, 2017 raid in al Ghayil, Yemen. In June 2016, the Office of the Director of National Intelligence granted a fee-waiver request regarding a FOIA request related to policies and communications with social media companies' removal of "extremist" content. In May 2016, the FBI granted a fee-waiver request regarding a FOIA request issued to the Department of Justice for documents related to Countering Violent Extremism Programs.

[40] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; s*ee also Leadership Conf. on CR*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53–54.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

CENTER FOR CONSTITUTIONAL RIGHTS

If you deny this request in whole or in part, please justify all withholdings by reference to specific FOIA exemptions and release all segregable portions of otherwise exempt material. Requesters reserve the right to appeal any responses to this Request.

We anticipate your determination regarding expedited processing within 10 days.[41] I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully submitted,

*/s/ Jeffrey Stein*

Jeffrey Stein
Brett Max Kaufman
National Security Project
American Civil Liberties Union Foundation
125 Broad St., 18th Fl.
New York, NY 10004
Tel: (646) 905-8904
jstein@aclu.org
bkaufman@aclu.org

Baher Azmy
Ian Head
Center for Constitutional Rights
666 Broadway, 7th Fl.
New York, NY 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org
ihead@ccrjustice.org

[41] *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).