**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AMERICAN CIVIL LIBERTIES UNION,
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, and CENTER FOR
CONSTITUTIONAL RIGHTS,

        Plaintiffs,

   v.

U.S. DEPARTMENT OF JUSTICE, including its
component OFFICE OF LEGAL COUNSEL,
U.S. DEPARTMENT OF STATE, and U.S.
DEPARTMENT OF DEFENSE,

        Defendants.

25 Civ. 10189 (PAE)

---

### DECLARATION OF EARL G. MATTHEWS

I, Earl G. Matthews, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am the General Counsel for the United States Department of War. I have held this role since July 31, 2025. In this role, I serve as the chief legal officer of the Department and as the principal legal advisor to the Secretary of War. I am responsible for legal determinations and legal policy across the Department of War and its Components. A significant portion of my responsibilities include oversight of the handling of highly sensitive materials including other agencies' equities. In my current capacity, I possess original classification authority for Department of War (DoW) information up to the TOP SECRET Level. Prior to this role, I served as a senior associate counsel to the President in the Office of the White House Counsel. Prior to joining the Administration, I worked for several years in the private sector, including for companies that manufacture unmanned defense systems. Prior to my tenure in the private sector, I held senior positions within the White House, the Department of War and the

1

Intelligence Community during President Trump's first term. Specifically, I served as the Deputy Assistant to the President and Senior Director for Defense Policy and Strategy on the National Security Council staff, where I was responsible for the coordination and implementation of all defense policy matters that rose to the level of the President. I am also the former Acting General Counsel/Principal Deputy General Counsel of the Department of the Army, a former Deputy Legal Counsel to the Chairman of the Joint Chiefs of Staff, and a former Special Counsel to the Director of National Intelligence. I was both an attorney and an intelligence officer at the Defense Intelligence Agency (DIA).

2.      I submit this declaration in support of the government's motion for summary judgment in this case. The facts set forth in this declaration are based upon my personal knowledge, my non-privileged conversations with other Executive Branch officials, and other non-privileged agency documents. I have not relied upon, nor do I disclose herein, any confidential communications made for the purpose of seeking or providing legal advice.

3.      I am familiar with the FOIA request and the responsive record at issue in this case, which is a legal advice memorandum (the "Memorandum") dated September 5, 2025. I have personally reviewed the Memorandum for the purposes of this litigation. The information included in the Memorandum consists of information, including information of various levels of classification, originating with the DoW as well as additional federal departments and agencies. The Department of Justice (DOJ), appropriately section marked the Memorandum in accord with government wide classification markings. In so doing, DOJ properly exercised derivative classification authority over the material. As an original classification authority, (OCA) I am authorized to determine whether DoW information in records like the Memorandum satisfy the requirements of Executive Order (E.O.) 13526, the executive order governing the classification

2

and protection of information that affects the national security, and whether the information complies with the various substantive and procedural criteria of that order. Executive Order 13526, signed by President Barack Obama on December 29, 2009, is the order that currently applies to the protection of national security information. I am bound by the requirements of E.O. 13526 when making classification determinations.

## FOIA EXEMPTION 1

4.    For information to be properly classified, and thus properly withheld from disclosure pursuant to FOIA Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526 § 1.1 (a):

a.   an original classification authority is classifying the information;

b.   the information is owned by, produced by or for, or is under the control of the United States Government;

c.   the information falls within one or more of the categories of information listed in § 1.4 of this order; and

d.   the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

5.    As I will explain in further detail below, in my role as an original classification authority for DoW, I have determined that the section markings in the Memorandum, applicable to DoW sourced information accurately reflect the level of classification.  Such information, withheld pursuant to Exemption (b)(1), is under the control of the United States Government, is classified, and is properly classified at the "Secret" and "Top Secret" levels because the

3

unauthorized disclosure of this information reasonably could be expected to result in serious or exceptionally grave damage to the national security, respectively. *See* E.O. 13526 §§ 1.2(a)(2), (1). While the memorandum includes material that is also classified by other federal agencies, in my experience and based on my expertise and review of the materials, the release of any of this classified information would result in such harm. When handling materials or equities from other agencies, the Department presumes that they are properly classified and handles them accordingly, unless an original classification authority from that agency determines otherwise. As the section markings applicable to DoW sourced information in the Memorandum accurately reflect the classification of the DoW information, I am confident that the derivative classification markings applicable to the other departments' and agencies' information should be credited and handled accordingly. The information withheld has not been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security, in accordance with section 1.7 of E.O. 13526.

6.      With these requirements in mind, I have personally reviewed the Memorandum. The information withheld pursuant to Exemption (b)(1) is currently and properly classified at the "Secret" or "Top Secret" level, and is subject to additional access controls, some of which are classified. The information withheld pursuant to Exemption (b)(1) is exempt from disclosure pursuant to several provisions of E.O. 13526 § 1.4(a)-(d), because it pertains to (a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; and (d) foreign relations or foreign activities of the United States, including confidential sources. I describe each of these types of information below.

7.      **First**, military plans, weapons systems, or operations are exempt from disclosure under Executive Order 13526 § 1.4(a). Portions of the Memorandum, which are classified at both the Secret and Top Secret levels, describe current and ongoing military plans and operations pertaining to the scope, duration, and targeting decisions for current and ongoing operations as well as the potential method of delivery, locations, and types of military equipment to be used in those operations. Disclosure of this information could reasonably be expected to cause serious or exceptionally grave damage to the national security because this information includes specific operational capabilities of United States military forces and targeting capabilities. If disclosed, adversaries could use this information to assess specific U.S. military capabilities, which could allow them to develop countermeasures or modify their behavior to render U.S. military operations less effective.

8.      **Second**, foreign government information is exempt from disclosure under Executive Order 13526 § 1.4(b). Portions of the Memorandum marked as Secret or Top Secret describe internal foreign government activities and information pertaining to the potential targets of the U.S. government operations. Disclosure of this information could reasonably be expected to cause serious or exceptionally grave damage to national security because this information relates to very recent activities of foreign governments. The information includes detailed assessments of foreign government activity and frank assessments of regimes that remain in power. Release of this information reasonably could be expected to cause serious or exceptionally grave damage to the national security by harming the U.S. relationship with foreign states as a result of disclosing candid U.S. assessments of their governments' actions and capabilities.

9.      **Third**, intelligence activities (including covert action), intelligence sources and methods, or cryptology are exempt from disclosure under Executive Order 13526 § 1.4(c).

Portions of the Memorandum marked as Secret or Top Secret draw information from intelligence sources and includes information derived from and pertaining to covert operations undertaken by the United States government. Disclosure of this information could reasonably be expected to cause serious or exceptionally grave damage to national security for the following two reasons.

10.     Disclosure would allow hostile entities to discover current intelligence activities and methods used by the United States, including undisclosed covert action. With the aid of this detailed information, hostile entities could severely disrupt the U.S. government's intelligence gathering capabilities—for example, by avoiding actions or behaviors that may be vulnerable to U.S. government capabilities.

11.     Additionally, disclosure would reveal intelligence sources, whether individuals or foreign governments. In general terms, where a source is an individual, the United States promises to protect the identities of its sources and their relationship with the United States because an individual who is revealed to be a source could become the victim of harassment, imprisonment, or death. If an intelligence asset provides valuable information to the United States, every detail of that information, from the substance to the timing of its collection, is information that, if exposed, could connect the source to that information, thus endangering the source. The loss of such a source and the critical intelligence that the source provides reasonably could be expected to cause serious or exceptionally grave harm to U.S. national security.

12.     Where a source is a foreign government or other foreign entity, disclosure that the source provided information about a specific topic, and the specific information provided, without authorization from the foreign government or entity would constitute a serious breach of trust that would almost certainly impair a relationship important to U.S. national security. The attendant reputational harm to the United States of disclosing classified information from a foreign

6

government or entity without its authorization would also risk the loss of potential assistance from other foreign governments that require confidentiality to convey sensitive information, which is critical to confronting threats to our national security. Damage to these important relationships reasonably could be expected to cause serious or exceptionally grave harm to U.S. national security.

13.    **Fourth**, information regarding foreign relations or foreign activities of the United States, including confidential sources, are exempt from disclosure under Executive Order 13526 § 1.4(d). The Memorandum references the United States' coordination with foreign countries on the execution of operations and the activities of foreign nations in response to the targets of those operations. Release of this information reasonably could be expected to cause serious or exceptionally grave harm to national security because, as explained above, foreign governments expect that information they provide voluntarily in confidence will be kept confidential.

14.    For all these reasons, disclosure of the information classified under § 1.4(c) could reasonably be expected to disrupt U.S. intelligence efforts.

## FOIA EXEMPTION 3

15.    In my assessment as an OCA, FOIA Exemption (b)(3) also requires the continued protection of the Memorandum. FOIA Exemption (b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

16.    Here, information in the Memorandum is exempted by the National Security Act of 1947, codified at 50 U.S.C. § 3024(h)(1). The government asserted Exemption (b)(3) to withhold

7

information pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004. This statute provides that the Director of National Intelligence (DNI) "shall protect from unauthorized disclosure intelligence sources and methods."[1] As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009. On its face, this federal statute leaves no discretion about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(h)(1) is absolute. *See CIA v. Sims*, 471 U.S. 159 (1985).

17.    Given the plain Congressional mandate to protect the Intelligence Community's sources and methods of gathering intelligence, I assess that intelligence methods would be revealed if the information withheld pursuant to Exemption (b)(1) and classified under EO 13526 § 1.4(c) is disclosed to Plaintiffs. Therefore, in response to the FOIA request, the government is prohibited from disclosing such information under 50 U.S.C. § 3024(h)(1).[2]

18.    The government is asserting Exemption (b)(3) in this case, in conjunction with Exemption (b)(1), to protect information that would reveal intelligence sources and methods protected under the National Security Act. As discussed above, the following categories of records contain information subject to Exemption (b)(3): information from intelligence sources, including information derived from and pertaining to covert operations undertaken by the United States government.

---

[1] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 3024(i)(1) and 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) and a subsequent amendment that struck a preceding subsection, the provision is now codified at 50 U.S.C. § 3024(h)(1).

[2] Although 50 U.S.C. § 3024(h)(1) does not impose a requirement to articulate harm, disclosure of this information would harm national security for the same reasons discussed above with regard to Exemption (b)(1).

## NONDISCLOSURE AND SEGREGABILITY

19.     The Memorandum has not been publicly disclosed. While some members of Congress have viewed the Memorandum and confirmed this publicly, the members of Congress did not disclose any of the Memorandum's content beyond its most basic conclusions and have not to my knowledge publicly disclosed any of its classified contents. In addition, members of Congress are not authorized to speak for the Executive Branch.

20.     To date, I am unaware of any authorized public disclosures of the Memorandum that could reduce the need to protect the information within it.

21.     While the Memorandum contains information that is not marked as classified, many of the unclassified segments, including portions of the legal analysis, heavily cite classified materials and sensitive legal opinions that have not been previously released to the public and in many cases, the existence of the cited works themselves has not been publicly acknowledged. The release of this information could potentially disclose classified information as it is derived from classified sources as cited throughout the Memorandum. In addition, when considered in combination as a compilation, it could disclose classified information by revealing classified associations, as provided by EO 13526 § 1.7(e).

22.     After my line-by-line review of the Memorandum, as an OCA I conclude that no segregation and release of non-exempt information is possible. For the reasons stated above, the relevant information is currently and correctly withheld pursuant to those FOIA exemptions to prevent serious or exceptionally grave damage to national security from disclosure. In addition, I understand that OLC has separately determined that the Memorandum is properly withheld in full under Exemption 5.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

9

EXECUTED this 1st day of May, 2026.

Earl G. Matthews
General Counsel
U.S. Department of War