**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, and CENTER FOR CONSTITUTIONAL RIGHTS,<br>Plaintiffs,<br>v.<br>DEPARTMENT OF JUSTICE including its component OFFICE OF LEGAL COUNSEL, DEPARTMENT OF STATE, and DEPARTMENT OF DEFENSE,<br>Defendants. | 25 Civ. 10189 (PAE) |

# MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S PARTIAL MOTION FOR RECONSIDERATION AND RELATED ADMINISTRATIVE STAY

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

## CONTENTS

PRELIMINARY STATEMENT ........................................ 1
ARGUMENT ........................................ 2
I. Legal Standard ........................................ 2
II. The Court Should Reconsider the Order's Requirement to Identify All Persons Given Access to the Memorandum ........................................ 3
A. The Order Constitutes Legal Error ........................................ 3
B. The Order Places an Unworkable and Inappropriate Burden on the President and Other Senior White House Officials ........................................ 8
III. The Court Should Administratively Stay the Disclosure Obligation to Preserve the Status Quo While the Government's Motion is Sub Judice ........................................ 11
CONCLUSION ........................................ 12
CERTIFICATE OF COMPLIANCE ........................................ 13

The government seeks partial reconsideration pursuant to Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b)(1) & (b)(6) of the Court's September 30, 2026 Opinion & Order (the "Order"), ECF No. 72—specifically, the Order's requirement that the Government identify and disclose all persons who have had or been given access to the Memorandum since it was finalized, *see id*. at 62-63—and an administrative stay of the obligation while the Court considers the motion (and for seven days thereafter if it denies the motion).

**PRELIMINARY STATEMENT**

The Order resolved most of the issues the parties presented in their cross-motions for summary judgment. While the government respectfully disagrees with certain portions of the Order and reserves its right to appeal, it seeks limited reconsideration—and a related stay—only of the Order's requirement for the government to identify all persons who have been given access to the OLC Memorandum.

The obligation "to identify by name and title, every person who, from its creation in September 2025 to date, has had or been given access to the OLC Memo in whole or in part, the date(s) of such access, the purposes for and context in which this access was given, and the basis on which these factual determinations have been made," Order at 62-63, should be set aside. First, we respectfully submit that it is based on a misapprehension of the law of the presidential communications privilege: confidential distribution within the executive branch for official government purposes does not waive the privilege, so the factual inquiry is not germane. Second, by burdening staff within the Executive Office of the President and inviting judicial scrutiny over those officials' deliberations on national security, it would constitute a serious breach of the separation of powers. Instead, the Court should decide the remaining issues in the parties' summary judgment motions on the basis of the facts in the existing record, as well as the Court's

in camera review of the Memorandum. Finally, the government seeks an administrative stay of the Order's disclosure requirement pending the resolution of this motion.

**ARGUMENT**

**I. Legal Standard**

Federal Rule of Civil Procedure 60(b) provides that a court may relieve a party from an order for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). A Rule 60(b) motion "is generally not favored and is properly granted only upon a showing of exceptional circumstances," an "onerous standard." *Youssef v. Halcrow, Inc.*, No. 11 Civ. 2283 PKC, 2013 WL 2338182, at *1 (S.D.N.Y. May 24, 2013) (quotation marks omitted). Reconsideration under Local Rule 6.3 is appropriate when the movant "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citations omitted). The movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Courts also have found that reconsideration is warranted in FOIA matters where, in its absence, compliance with an order could harm national security interests. *See, e.g.*, *New York Times v. DOJ*, No. 22 Civ. 1539 (JSR), 2023 WL 7305242, at *3 (S.D.N.Y. Nov. 6, 2023); *Open Soc'y Just. Initiative v. CIA*, No. 19 Civ. 1329 (PAE), 2021 WL 4150522, at *2 (S.D.N.Y. Sept. 13, 2021) (noting that the court had granted partial reconsideration of its order based upon supplemental classified submissions proffered on motion for reconsideration).

## II. The Court Should Reconsider the Order's Requirement to Identify All Persons Given Access to the Memorandum

The Court should reconsider the Order's directive to identify and disclose all persons given access to the Memorandum, including the dates of and reasons for access. Order at 62-63. The requirement misconstrues the legal contours of the presidential communications privilege. And by requiring disclosures of the inner workings of the White House on national security matters, it would inappropriately burden the executive branch in violation of the separation of powers. The Court has sufficient facts in the government's existing submissions, as well as the Memorandum itself to the extent relevant, to decide the remaining open issues.

### A. The Order Constitutes Legal Error

First, the Order's requirement for the government to identify every person given access to the Memorandum rests on the legally mistaken premise that if other executive branch staff confidentially reviewed the Memorandum for purposes other than advising the President, it could result in a waiver of the privilege—even if those officials had a legitimate need and proper clearance to access the Memorandum. That conclusion is at odds both with case law from higher courts interpreting the privilege, and with the Order's separate, correct conclusion that the working law exception does not apply.

The Order's standard overlooks the essential purpose that the presidential communications privilege is designed to serve: to protect presidential decisionmaking. The privilege protects not only pre-decisional documents leading to a presidential decision, but "final and post-decisional materials" as well. *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997). To exclude these materials from the privilege would impermissibly "limit the President's ability to communicate his decisions privately, thereby interfering with his ability to exercise control over the executive branch." *Id.*

The principle that the privilege continues to attach to materials "communicate[d] . . . privately" within the executive branch, *id.*, makes sense: presidential decisions are not simply made and filed away; they must be carried out. Thus, subordinate officials may need to review materials that were created during the decisionmaking process, both to understand the considerations that bore on the decision and to help execute the decision in the manner the President expects. Such subordinate review is critical to implement the President's decisions, and protecting the fidelity of execution is equally a purpose of the privilege. *See Jud. Watch, Inc. v. DOD*, 913 F.3d 1106, 1110 (D.C. Cir. 2019) (the privilege is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" because it "relates to the effective discharge of a President's powers") (quoting *United States v. Nixon*, 418 U.S. 683, 708, 711 (1974)). Those purposes would be entirely undermined if the President, after making a decision, had no ability to implement it through his subordinates without waiving the privilege. *See generally Myers v. United States*, 272 U.S. 52, 117 (1926) ("[T]he President alone and unaided could not execute the laws. He must execute them by the assistance of subordinates.").

By contrast, the Order appears to hold that even sharing a document with those having a legitimate need to know could waive the presidential communications privilege. Order at 61. The Order cites *CAIR Connecticut v. USCIS.*, 669 F. Supp. 3d 64, 80 (D. Conn. 2023), for the proposition that "the *reason* that a given recipient 'needs to know' must comport with the purpose of the privilege, which is to promote candor and effective presidential decision-making." Order at 61. But this analysis neglects the privilege's protection of post-decisional materials and implementation of presidential decisions. Nor can it be squared with the President's "unique constitutional role," which contemplates presidential autonomy and confidentiality while carrying out his Article II responsibilities. *In re Sealed Case*, 121 F.3d at 745.

The Order also cites *Center for Effective Government v. Department of State*, 7 F. Supp. 3d 16 (D.D.C. 2013) ("*CEG*"), which was addressed in the government's summary judgment briefing. *See* ECF No. 54 at 18-22. As we explained, *CEG* is best read to hold that a document that was never genuinely confidential (as shown there by, for example, the President's own detailed public remarks about the contents of the document) cannot be protected by the presidential communications privilege. But the facts of this case are nothing like *CEG*'s. *CEG* does not hold that circulation beyond the circle of presidential advisors whose communications may qualify for presidential communications privilege waives the privilege. ECF No. 59 at 3. As we explained, this reading confuses the question of which communications may qualify for the privilege with the question of when (if ever) the privilege may be waived.

Several of the other cases the Order cites involved questions about potential official *public* disclosure of privileged material—which is not even alleged here. Thus, for example, the Order cites (at 51-52, 58) *ACLU v. DOJ*, No. 15 Civ. 1954 (CM), 2016 WL 889739, at *5 (S.D.N.Y. Mar. 4, 2016), where "a document purporting to summarize at least part of" a withheld OLC document "was released by the White House to the public in an admitted effort at transparency." Similarly, in *Brennan Ctr. for Just. v. Dep't of State*, No. 17 Civ. 7520 (PGG), 2019 WL 10984173, at *6 (S.D.N.Y. Mar. 29, 2019), the court noted that "if the information contained within the withheld documents has been widely and publicly disseminated, the rationale for applying the presidential communications privilege is much less compelling," and ordered in camera review to evaluate that question. The same was true in *CEG* itself, where the President "publicly touted the directive" at issue and released a public "fact sheet" that "described in detail the goals and initiatives set forth therein, copying verbatim many portions of the [document] and closely paraphrasing" other portions. 7 F. Supp. 3d at 24, 25. The government agrees that a specific,

official public disclosure that matched the Memorandum's contents could abrogate both FOIA exemptions, *see, e.g.*, *Protect Democracy Project v. NSA*, 10 F.4th 879, 890 (D.C. Cir. 2021), and the privilege itself, *see, e.g.*, *In re Sealed Case*, 121 F.3d at 741, as the information would no longer be confidential at that point. But plaintiffs do not claim, and the Court did not find, such official disclosures here.[1]

As the government also pointed out, ECF No. 54 at 21-22, there are legitimate reasons why officials may need to review a document protected by the presidential communications privilege other than providing further advice to the President. To take a clear example, if the President issues a document memorializing the reasons for making a decision and directing further action, subordinate officials who are not direct advisors may receive that document for the purpose of carrying out the decision, or for other official government purposes related to the decision. Given that such post-decisional documents remain protected by the presidential communications privilege, Order at 50, it cannot be that circulation to the very officials who must execute the directive waives the privilege. That would undermine, rather than enhance, the "the public and constitutional interest in preserving the efficacy and quality of presidential decisionmaking." *In re Sealed Case*, 121 F.3d at 762. It would invite a game of telephone rather than effective transmission of written directions to subordinates. Equally, as discussed above, executive branch officials charged with implementing a decision may find it helpful—in order to faithfully carry out the President's or other official directives—to review materials prepared to advise the President in making the decision. For instance, an agency may ask OLC's advice on a legal issue related to those addressed in a prior OLC memorandum to the White House protected by the presidential

[1] As we have explained, statements from members of Congress or anonymous press reports do not constitute qualifying official disclosures. *See* ECF No. 59 at 16-19; ECF No. 69 at 1-2.

communications privilege. There is no good reason why OLC staff, by reviewing the prior memorandum, should risk waiver of the presidential communications privilege.

For much the same reasons, the Court correctly determined that the working law exception does not apply to the presidential communications privilege. Order at 55-56. Because even post-decisional documents fall within the scope of the privilege, the concern grounding the working law exception—that what was once pre-decisional advice has become "effective law and policy," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975)—does not apply to the presidential communications privilege. And *In re Sealed Case* squarely recognized that the President may need to communicate final decisions privately. 121 F.3d at 745-46. But the protection for communicating final decisions cannot be useful if that communication itself waives the privilege.

Finally, the Order's legal standard is not workable. It cannot be the case that to show the presidential communications privilege, the government must, as a threshold matter, survey the executive branch and identify every person given access to a document, as well as the specific dates and reasons for access. Such a requirement would leave the presidential communications privilege, which is grounded in fundamental separation of powers principles and whose waiver "should not be lightly inferred," *In re Sealed Case*, 121 F.3d at 741, on worse footing than the attorney-client privilege. Courts do not require a party claiming attorney-client privilege over a document to catalog every person who has accessed it—even though certain disclosures may breach the privilege. Instead, courts look to whether the holder takes precautions to keep the material in confidence, or instead treats it "in such a careless manner as to negate her or his intent to keep them confidential." *United States v. Mejia*, 655 F.3d 126, 132-33 (2d Cir. 2011) (quotation

marks and brackets omitted).[2] The government's declarations already show that the Memorandum was kept in confidence: the advice the Memorandum reflects was "provided in confidence," Watzel Decl. ¶ 24, and access to the Memorandum itself—which is highly classified and exists only in four hard copies—has been "strictly controlled." Second Matthews Decl. ¶ 5. It is thus logical and plausible that the Memorandum was circulated, and remains treated, "privately." *In re Sealed Case*, 121 F.3d at 746; *see also, e.g.*, *N.Y. Times v. DOJ*, 282 F. Supp. 3d 234, 240 (D.D.C. 2017) (concluding an OLC memo had been kept confidential for purposes of attorney-client privilege in part because "[g]iven its classified status, it seems unlikely the [document] has been widely or indiscriminately circulated").

### B. The Order Places an Unworkable and Inappropriate Burden on the President and Other Senior White House Officials

The Order's directive to catalog every person given access to the Memorandum and the reasons for access should separately be reconsidered because it inappropriately burdens the functioning of the President and other senior White House officials in contravention of the separation of powers.

As the Order acknowledges, the Supreme Court has long recognized "the Executive's ability to resist production of records on the grounds that a judicial inquiry 'into the secrets of the cabinet' would give the appearance of "'intermeddl[ing] with the prerogatives of the executive.'" Order at 47 n.12 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803)).

More recently, the Supreme Court held that "special considerations control" when civil discovery implicates White House decisionmaking. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004). The President had established a working group that two nonprofit groups claimed was an

[2] The Order concluded that the attorney-client privilege did not apply to the Memorandum, but this was on the separate ground that it constitutes working law, not on the basis of waiver through absence of confidentiality. Order at 44-47.

"advisory committee" under the Federal Advisory Committee Act ("FACA"), and therefore subject to certain disclosure requirements. *Id*. at 373-74. The district court authorized discovery into the body's structure and membership. *Id.* at 375. The Supreme Court, however, held that the discovery order implicated basic separation of powers concerns. *Id*. at 390. While reaffirming that the President is not "'above the law,'" the Court emphasized that courts should "'afford Presidential confidentiality the greatest protection consistent with the fair administration of justice,'" because inappropriate discovery obligations could "distract [the executive branch] from the energetic performance of its constitutional duties." *Id*. at 382 (quoting *Nixon*, 457 U.S. at 715). Moreover, an order directing disclosure of the inner workings of the White House and other executive branch agencies would "place[] courts in the awkward position of evaluating the Executive's claims of confidentiality and autonomy, and push[] to the fore difficult questions of separation of powers and checks and balances." *Id*. at 389. Such possibility for "'constitutional confrontation'" between the branches "should be avoided whenever possible." *Id*. at 389-90 (quoting *Nixon*, 418 U.S. at 692). The Court encouraged the lower courts, on remand, to consider alternatives. *Id*. at 389-91.

The Supreme Court has also instructed courts to consider the relative importance of the facts requested from the President and other senior White House officials. In *Cheney*, the Court noted that the absence of information in a civil case (there, about potential disclosure obligations under FACA) does not raise the same constitutional concerns the Court confronted in *Nixon*, which involved a subpoena in a criminal trial, where there is a "'fundamental' and 'comprehensive' need for 'every man's evidence.'" *Id*. at 384-85. The Court made a similar observation in *Trump v. Mazars USA, LLP*, where it held that Congress's need for information to ground the legislative

process, while important, could not justify a subpoena seeking the President's personal papers if other sources of information were available. 591 U.S. 848, 869-70 (2020).

Reconsideration is warranted under these principles because the Order's substantial burdens on the President, White House, and executive branch would not develop facts legally necessary for the disposition of this case. *See supra* Part II.A.

First, there is no doubt that compiling and disclosing a list "by name and title, every person who, from its creation in September 2025 to date, has had or been given access to the OLC Memo in whole or in part, the date(s) of such access, the purposes for and context in which this access was given, and the basis on which these factual determinations have been made," Op. 62-63, will substantially and improperly intrude on the functioning of the executive branch, including the Executive Office of the President. Investigating and preparing such a list will take time away from the duties of the National Security Council and White House Counsel's Office staff. Moreover, identification of individuals and the reasons for their access may itself be privileged or classified. While the Order permits "appropriate redactions," Order at 63, separation of powers concerns may render even in camera review of sensitive information (such as classified national security information) disfavored. *See United States v. Reynolds*, 345 U.S. 1, 10 (1953). And determining access to classified information is a presidential, not a judicial, function. *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988).

Second, plaintiffs did not seek identification and disclosure of each person who accessed the Memorandum (though they did suggest that discovery could be appropriate, *see* ECF No. 57 at 15, ECF No. 60 at 10 n.6). The government thus had no occasion to cite *Cheney* or related cases in its motion papers, and the Court in crafting its Order appears to have overlooked them. Reconsideration is therefore appropriate.

Third, the Order's disclosure requirement is unnecessary because the government's filings in support of its motion contain sufficient factual information to resolve the issue under the operative legal standard. As the government's declarations explain, the Memorandum is classified at the Top Secret level and contains sensitive compartmented information. Second Matthews Decl. ¶ 4. Consistent with the standards for classified information, *see* E.O. 13526 § 4.1(a)(3), only individuals with a need to know are permitted access. Second Matthews Decl. ¶ 5. The document is sufficiently sensitive that only four physical copies exist, and electronic copies are not maintained. *Id*. These statements reinforce OLC's declaration, which states that the Memorandum was both prepared and has been maintained in confidence. Watzel Decl. ¶ 24.

These facts—which are afforded a presumption of good faith, *see* Order at 23—logically and plausibly demonstrate that the Memorandum was created and maintained confidentially. That is all that is necessary. *See supra* Part II.A. Plaintiffs have not identified official statements or other facts that contradict the declarations: nothing suggests that the *confidentiality* of the highly classified Memorandum has in some way been breached. *Cf.* Order at 59-60.

**III. The Court Should Administratively Stay the Disclosure Obligation to Preserve the Status Quo While the Government's Motion is Sub Judice**

Finally, the government respectfully requests that the Court administratively stay the portion of the Order as to which it seeks reconsideration—the obligation to disclose all persons who have accessed the Memorandum—until the government's motion for reconsideration is decided, and for at least seven days thereafter if it is denied. It is appropriate to preserve the status quo while the Court evaluates the significant legal and separation of powers concerns the government has raised. *See SEC v. Ahmed*, No. 15-CV-675 (JAM), 2024 WL 5182669, at *8 (D. Conn. Nov. 27, 2024) (noting that an "administrative stay is [] a vehicle to buy the court time to deliberate") (brackets and quotation marks omitted).

## CONCLUSION

The government's motions for reconsideration and a stay should be granted.

Dated: October 8, 2026
New York, New York

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: */s/ Peter Aronoff*
PETER ARONOFF
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697
E-mail: peter.aronoff@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I, Peter Aronoff, counsel of record for defendants, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Local Rule 7.1(c) allows to be excluded in preparing the following word count. I further certify that this brief contains 3495 words.

By: *<u>/s/ Peter Aronoff</u>*
Peter Aronoff
Assistant United States Attorney