**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, and CENTER FOR CONSTITUTIONAL RIGHTS,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE including its component OFFICE OF LEGAL COUNSEL, DEPARTMENT OF STATE, and DEPARTMENT OF DEFENSE,

Defendants.

25 Civ. 10189 (PAE)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S PARTIAL MOTION FOR RECONSIDERATION**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

**CONTENTS**

ARGUMENT ........ 1
I. The Government Advocates a Standard for Presidential Communications Privilege That Serves Its Purposes, Not a "Limitless" Privilege ........ 1
II. The Order's Standard Is Not Workable ........ 4
III. The Existing Record Demonstrates the Memorandum Remains Protected ........ 5
CONCLUSION ........ 6
CERTIFICATE OF COMPLIANCE ........ 7

Plaintiffs' opposition brief, ECF No. 78 ("Opp."), adheres to the mistaken view—never adopted by the Supreme Court or any Court of Appeals—that a document protected by the presidential communications privilege loses that protection if it is provided to other executive branch officials for a reason other than advising the President. That position is unworkable and inconsistent with the purposes of the privilege. Plaintiffs also fail to engage with the Supreme Court's decisions on separation of powers, and cannot explain why a privilege rooted in the Constitution should be abrogated more easily than the attorney-client privilege. Finally, plaintiffs' suggestion that the privilege was waived because the Memorandum was read by the four-star general carrying out the military operation on which the Memorandum provided advice is facially implausible. The Court should grant reconsideration.

## ARGUMENT

### I. The Government Advocates a Standard for Presidential Communications Privilege That Serves Its Purposes, Not a "Limitless" Privilege

Plaintiffs mistakenly claim that the government seeks reconsideration based on a "limitless" or "boundless" theory of the presidential communications privilege. Opp. 1, 2, 7. Not so: the government recognizes that "only the work of a limited circle of close presidential advisors and their staff is eligible for the privilege," ECF No. 54 at 17-18 (quotation marks omitted), and also recognizes that the privilege may be abrogated in FOIA cases by disclosure, *see* Govt. Br. 6; *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997) (explaining the President's need to communicate his decisions "privately" as one basis for the privilege). A requirement to maintain

confidentiality is neither novel nor a recipe for an executive power grab: the attorney-client privilege is subject to the same standard. Govt. Br. 7-8.[1]

Reconsideration is warranted, not to recognize a limitless privilege, but because the Order appears to adopt a theory of waiver that is incompatible with the purposes of the presidential communications privilege. There are legitimate, practical reasons why documents protected by the presidential communications privilege may need to be provided confidentially within the executive branch: they may help subordinate officials understand the basis for, or considerations that bore on, a presidential decision; they may be useful for officials confronting similar problems in the future; or, in the case of a presidential directive, they may help subordinates carry out the decision as expected. Govt. Br. 6. These are core purposes of the privilege, which "'relates to the effective discharge of a President's powers.'" *See Jud. Watch, Inc. v. DOD*, 913 F.3d 1106, 1110 (D.C. Cir. 2019) (quoting *United States v. Nixon*, 418 U.S. 683, 708, 711 (1974)).

Plaintiffs instead attack strawmen. Plaintiffs cite statistics that 711,404 government employees had TS/SCI security clearance in 2019, Opp. 7, but that is irrelevant even if accurate. A far narrower range of individuals would have the appropriate clearance and need here: the Memorandum contains compartmented information and has additional access controls, Second Matthews Decl. ¶ 4, and accessing classified information—including the Memorandum—is

[1] Plaintiffs and the Court's Order correctly state that the presidential communications privilege is qualified, not absolute. *See* Opp. 4 (citing Order at 50); *In re Sealed Case*, 121 F.3d at 745. But that feature is not relevant here. Exemption 5 incorporates civil privileges, but does not admit exceptions to those privileges that might apply in other litigation: Documents that are not "routinely or normally" disclosed in ordinary litigation on a showing of relevance remain absolutely protected by exemption 5. *See FTC v. Grolier Inc.*, 462 U.S. 19, 27 (1983). Thus, while in other contexts a party might seek to overcome the attorney-client privilege based on alleged misconduct or seek attorney work product based on a showing of need, exemption 5 does not permit such exceptions. *See Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1022 (7th Cir. 2012); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n.16 (1975)).

always subject to a need to know, *see* E.O. 13526 § 4.1(a)(3); Second Matthews Decl. ¶ 5. And access to the Memorandum has, in fact, been "strictly controlled." Second Matthews Decl. ¶ 5. Nor does the government contend that a document that "*at any time* was treated confidentially for presidential advisory purposes" remains forever privileged, come what may. Opp. 5. The privilege may be lost in FOIA cases through public disclosure or if the document is not kept "private[]." *In re Sealed Case*, 121 F.3d at 746. And while plaintiffs argue the government's position that even a document that "becomes the basis for agency action" could remain privileged must be wrong, Opp. 5, that is exactly what the *In re Sealed Case* court anticipated when it reaffirmed the privilege allows the President to communicate his decisions "privately."

Plaintiffs cite no comparable case finding waiver for a privileged document distributed confidentially within the executive branch. The government has discussed at length *Center for Effective Government v. Department of State*, 7 F. Supp. 3d (D.D.C. 2013), which involved *public* disclosures of the same content that was putatively protected. Govt. Br. 5. Meanwhile, in *Knight First Amendment Institute v. Centers for Disease Control & Prevention*, the court observed that the two media-strategy documents at issue "were not treated as confidential for the purposes of the [presidential communications privilege]"; contained no limitation on further distribution; did not contain classified information; that the government had disclosed similar information publicly; and that their contents were "ultimately disseminated to other CDC officials in general terms." 560 F. Supp. 3d 810, 829 (S.D.N.Y. 2021). Each of these points materially distinguishes those documents from the closely held, highly classified, and confidentially kept Memorandum. Put simply, *Knight* and *CEG* involved documents whose contents were not kept confidential. That could not be further from the case here.

Plaintiffs' position would create untenable results. If any circulation to executive branch officials for a purpose other than advising the President waived the privilege—even if made in confidence—then even review by litigation counsel in this FOIA case would abrogate the privilege. And plaintiffs' suggestion that the government may have waived the privilege by permitting Congress to review the Memorandum (Opp. 12 n.6) would, if adopted, invite serious interbranch conflict. *Cf.* ECF No. 59 at 16 (citing *Murphy v. Dep't of Army*, 613 F.2d 1151, 1155 (D.C. Cir. 1979)).

## II. The Order's Standard Is Not Workable

Plaintiffs argue that the government could comply with the Order, Opp. 7-8, but whether compliance is literally possible is beside the point. Instead, the government argues that the standard the Order appears to adopt does not adequately account for the separation of powers.

The presidential communications privilege is rooted in constitutional separation of powers, and its waiver "should not be lightly inferred." *In re Sealed Case*, 121 F.3d at 741. A standard that would require the government—as part of its burden to substantiate a FOIA exemption—to compile a list not each individual given access to a confidential document and the purpose for each individual's access does not respect that principle. It would create a burdensome process to invoke the privilege, even though in other civil contexts courts curtail discovery to avoid the need to raise the privilege at all. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004) (noting that courts should "explore other avenues" to limit overbroad civil discovery demands rather than "forcing the Executive to invoke privilege").[2] It would treat the presidential communications privilege less favorably than the attorney-client privilege. Govt. Br. 7. And as we have explained,

[2] The government acknowledges that the Order's requirement to prepare the list is not "discovery," *see* ECF No. 77, and the government did not intend, by citing *Cheney*, to suggest that the Court had ordered disclosure to plaintiffs or the public. Rather, the principles that *Cheney* articulated—albeit in the distinct context of civil discovery—are relevant to the issues here.

it is particularly inappropriate here, because the existing factual record establishes that the highly classified Memorandum has been kept in confidence. Govt. Br. 7-8.

Finally, plaintiffs appear ready to concede that the Order should not be applied at least to the Executive Office of the President. Opp. 9-10. Plaintiffs' admission is telling as to the weakness of their own arguments. Their suggested limitation would not surmount the legal problems noted in Section I because, as we have explained, no additional facts are necessary to adjudicate the remaining issues. Exempting the EOP would "'avoid[]'" aspects of the "'constitutional confrontation'" between courts and the executive branch, as the *Cheney* court instructed should be done when possible. 542 U.S. at 389-90 (quoting *United States v. Nixon*, 418 U.S. 683, 692 (1974)). But requiring high-level national security officials outside the EOP to account for their access to the Memorandum would still raise separation of powers concerns and distract them from their other duties. Govt. Br. 8-10.

## III. The Existing Record Demonstrates the Memorandum Remains Protected

Finally, while the parties agree that the existing record suffices to decide the remaining open issues, Opp. 10, plaintiffs' characterization of that record (and its import) is mistaken.

That General Donovan read the Memorandum is no basis to find the presidential communications privilege abrogated. General Donovan was testifying about his actions as the Commander of U.S. Southern Command, the lead military command for Operation Southern Spear. *See* Lead IG Report to the U.S. Congress, Operation Southern Spear at 4 (July 30, 2026), available at https://media.defense.gov/2026/Aug/03/2003974235/-1/-.1/1/OSS_Q3_JUN2026_REV_FINAL_508.PDF. The presidential communications privilege cannot be waived if the four-star general implementing a presidential directive to undertake a military operation reads OLC's memorandum providing legal advice about that very operation. A standard requiring that the document be withheld from his view to preserve privilege in the future

would be absurd, and wholly inconsistent with the preserving the quality of presidential decisionmaking and promoting effective supervision of the Executive Branch. Moreover, plaintiffs' characterization of *In re Sealed Case* as holding that the "privilege [was] inapplicable to a report that was shared with a single person beyond the White House," Opp. 12, conspicuously omits that the "single person" was the personal attorney of a former official. That is obviously different from an executive branch official with a need to know in order to implement a presidential directive.

As we have explained, the existing record meets the appropriate legal standard for withholding because the Memorandum was protected by the presidential communications privilege when it was created, and has remained confidential since. Govt. Br. 11 (citing Watzel Decl. ¶ 24, Second Matthews Decl. ¶¶ 4-5).

## CONCLUSION

The government's motion for reconsideration should be granted.

Dated: October 21, 2026
New York, New York

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: */s/ Peter Aronoff*
PETER ARONOFF
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697
E-mail: peter.aronoff@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I, Peter Aronoff, counsel of record for defendants, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Local Rule 7.1(c) allows to be excluded in preparing the following word count. I further certify that this brief contains 1744 words.

By: *<u>/s/ Peter Aronoff</u>*
Peter Aronoff
Assistant United States Attorney