**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*,<br>Plaintiffs,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br>Defendants. | Civil Action No. 25-10189 (PAE) |

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW**

Jeffrey Stein
Brett Max Kaufman
Natalie Smith (admitted pro hac vice)
Ashley Gorski
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Tel: (646) 905-8904
jstein@aclu.org
bkaufman@aclu.org

Perry Grossman
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3347
pgrossman@nyclu.org

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org

## INTRODUCTION

Defendants' latest submissions reinforce what was already apparent: the presidential communications privilege does not apply to the Office of Legal Counsel ("OLC") memo. This is so for three reasons.

First, on top of their admission that SOUTHCOM Commander General Francis L. Donovan reviewed the memo only for operational purposes and had no contact with the President or his advisors, *see* ECF No. 80 at 5–6, Defendants now concede that multiple subordinate officials reviewed the memo solely to "inform their views" about carrying out executive branch policy or to advise other subordinate officials in doing so, ECF No. 87 at 3–4. As this Court and others have held, such "downstream dissemination" of a presidential advice document for non-advisory purposes is "inconsistent with the privilege's narrow parameters" and thus eviscerates it. ECF No. 81 at 9.

Second, Defendants now admit that several Department of Justice ("DOJ") attorneys reviewed the OLC memo solely in their capacities as defense counsel in litigation concerning the U.S. government's wrongful killing of two Trinidadian men in an October 2025 boat strike. *See* ECF No. 92 at 1–2; ECF No. 87 at 5. These DOJ lawyers are well beyond the President's inner circle, and their review was not in service of presidential decision-making. It was thus incompatible with "the privilege's narrow contours." ECF No. 81 at 8–9. And any suggestion that their access to the memo was necessary to defend the government in litigation is just as illogical as Defendants' claim, twice rejected by this Court, that military personnel needed to see the memo to understand the scope of their authority to initiate or conduct a boat strike. *See id.* at 9–10; ECF No. 72 at 61.

Third, Defendants presented the memo to numerous members of Congress after they demanded access to the legal basis and governing parameters of the boat strikes campaign. *See* ECF No. 72 at 14–19. After freely offering up the memo to members of a "rival political branch," *Trump v. Mazars USA, LLP*, 591 U.S. 848, 871 (2020)—including the ranking members of key oversight committees—Defendants cannot now credibly claim that they treat the memo as containing closely held advice that the President's advisors would be "unwilling to express except privately," *United States v. Nixon*, 418 U.S. 683, 708 (1974).

With respect to each genre of dissemination, Defendants protest that holding the privilege inapplicable would yield intolerable non-secrecy-preserving outcomes. But the OLC memo may not remain secret here *only* because Defendants affirmatively abrogated other executive privileges that ordinarily protect similar documents from disclosure—and the presidential communications privilege is not a broad, fail-safe privilege that the government may rely upon simply because all other privileges have been lost. As this Court has rightly reaffirmed, the privilege "should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected." ECF No. 81 at 8 (quoting *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)). It cannot—and need not—be conscripted into serving the same purposes as distinct executive privileges that, due to Defendants' choice to expressly adopt the memo as working law, no longer shield it from public release.

The Court should deny Defendants' motion for summary judgment.

## ARGUMENT

### I. Review by subordinate officials to inform implementation of executive branch policy rendered the privilege inapplicable.

Building on their concession that General Donovan reviewed the memo only for operational purposes and did not serve as a presidential advisor, *see* ECF No. 80 at 5–6,

Defendants' latest submissions admit that multiple subordinate officials have seen the memo solely because they "need[ed] to know the contents of the document to carry out presidential directives" or to advise "others who were doing so," not for a presidential advisory purpose. ECF No. 87 at 4.[1] This Court and others have unequivocally held that "imposing 'need to know' restrictions on downstream Executive Branch recipients" does not preserve the privilege, ECF No. 81 at 9, where, as here, "the *reason* that a given recipient 'needs to know'" does not "comport with the purpose of the privilege, which is to promote candor and effective presidential decision-making," ECF No. 72 at 61 (quoting *Council on Am.-Islamic Rels. – Connecticut v. U.S. Citizenship & Immigr. Servs.*, 669 F. Supp. 3d 64, 80 (D. Conn. 2023) (emphasis in original)). Defendants concede as much. *See* ECF No. 87 at 2–3. Their circulation of the memo to subordinate officials far from the President purely to inform implementation of executive branch policy thus destroyed the privilege.

Urging otherwise, Defendants point to *In re Sealed Case*'s statement that the privilege encompasses "final and post-decisional material." ECF No. 87 at 3 (quoting *In re Sealed Case*, 121 F.3d at 746). But as this Court already held, *In re Sealed Case* does not "come[] close to supporting" Defendants' position. ECF No. 81 at 8. That case makes clear that the privilege protects post-decisional communications *only* where they are authored or solicited and received by individuals within the scope of the privilege *and* made for a presidential advisory purpose. *See* ECF No. 78 at 4 n.1 (citing *In re Sealed Case*'s discussion of "follow-up reports" from presidential advisors). And that case is emphatic that "the privilege should not extend to staff outside the White

---

[1] Oddly, despite acknowledging General Donovan's review, Defendants do not list him as one of the memo's recipients in their latest public filings. *See generally* ECF Nos. 86, 87. Although General Donovan is presumably listed in Defendants' ex parte classified submissions, his omission from Defendants' public filings undermines Defendants' claim that the ex parte filings "contain[] additional detail that cannot be disclosed publicly without risking disclosure of classified information." ECF No. 87 at 1 n.1.

House in executive branch agencies." *In re Sealed Case*, 121 F.3d at 752; *see also Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1122 (D.C. Cir. 2004) (rejecting "an interpretation [that] would sweep within the reach of the presidential privilege much of the functions of the executive branch"). Accordingly, this Court should (once again) reject Defendants' efforts to radically expand the privilege well beyond its narrow ken.

## II. Review by DOJ defense counsel in *Burnley v. United States* abrogated the privilege.

Defendants also admit that several DOJ attorneys reviewed the memo in their capacities as defense counsel in *Burnley v. United States*, No. 26-cv-10364-LTS (D. Mass. filed Jan. 27, 2026), a wrongful death action brought by family members of two victims of an October 2025 boat strike.[2] *See* ECF No. 92; ECF No. 90 at 3; ECF No. 87 at 5. Defendants cite no case law holding that review by these attorneys—who are well beyond the President's inner circle and were not acting as presidential advisors—was consistent with maintaining the privilege. (There is none.) Instead, they advance two unsupported arguments, both of which fail.

First, Defendants contend that the DOJ attorneys' review was "necessary" to the government's defense in *Burnley*. ECF No. 92 at 2; *see* ECF No. 87 at 5. But this is just another way of saying that these attorneys had a "need to know" the memo's contents for a reason unrelated to the privilege's purpose.[3] As noted above, courts, including this one, have universally held that such "need to know" restrictions are inconsistent with maintaining the privilege. *See infra* Part I (collecting cases). That principle applies with equal force here.

---

[2] Some of Plaintiffs' attorneys in this action also represent the plaintiffs in *Burnley*. *See* ECF No. 49 at 2 n.1.

[3] In this way, DOJ attorneys' review of the memo in connection with the FOIA matters referenced in Defendants' November 12 letter, including this litigation, *see* ECF No. 90 at 1, stands on a different footing: Where a government attorney reviews a presidential advice document solely to defend the government's invocation of the presidential communications privilege with respect to that document, their review is plainly consistent with the privilege's underlying purpose.

In any event, there is no reason to believe that review of the OLC memo was, in fact, necessary to the government's defense in *Burnley*. Defendants now claim that DOJ attorneys needed the memo to understand their client's position as to the legality of the strike at issue in *Burnley*, and to consider whether classified information might justify the case's dismissal on state secrets grounds. *See* ECF No. 92 at 1–2. But nowhere do they explain why access to *presidential advice* was essential to those aims. "[T]o state the obvious, there are alternative ways to educate" DOJ defense counsel as to the government's view on the legality of a military operation. ECF No. 72 at 61. And it is unclear why access to classified information as presented in the OLC memo, as opposed to the original sources of that information, was necessary for defense counsel to make a state-secrets-related litigation decision. *Cf.* ECF No. 53 ¶ 3 (explaining that the classified information in the OLC memo "originat[ed] with the [Department of Defense] as well as additional federal departments and agencies").[4]

Second, Defendants assert that finding the privilege abrogated here would yield an unworkable rule. *See* ECF No. 87 at 5. Yet, in the same breath, they concede that a DOJ attorney's review of classified presidential advice does not imperil the government's reliance on other executive privileges, such as the deliberative process and attorney-client privileges. *See id.*

---

[4] To the extent Defendants suggest DOJ defense counsel needed access to the memo because the *Burnley* plaintiffs alleged that (1) the government "pointed to" it as the legal basis for the boat strikes campaign and (2) its conclusions have been outlined in "news reports," First Amended Complaint ¶¶ 6, 62, *Burnley*, No. 26-cv-10364-LTS (D. Mass. June 26, 2026), ECF No. 45; ECF No. 92 at 2 (citing these allegations), that is obviously false. Indeed, this Court assessed similar facts—and found them to be evidence of the memo's adoption as working law—without reviewing the memo itself. *See generally* ECF No. 72. And if Defendants' argument is that access was necessary because the *Burnley* plaintiffs put the memo's "legal reasoning . . . directly at issue," ECF No. 92 at 2, that is belied by the *Burnley* complaint, which explicitly states that the plaintiffs' claims do not turn on the memo's contents, *see* First Amended Complaint ¶ 6, *Burnley*, ECF No. 45 ("Whatever that secret memorandum states, it cannot render the patently illegal killings lawful.").

Ordinarily, then, the presidential communications privilege is wholly irrelevant to whether DOJ attorney review will, on its own, risk public disclosure of a presidential advice document. There is thus no reason to disregard "the privilege's narrow parameters," ECF No. 81 at 9, simply because Defendants have, in this rare case, affirmatively abrogated other executive privileges by adopting the OLC memo as working law.

**III. Review by members of Congress for oversight purposes removed the privilege.**

Finally, as chronicled in this Court's September 30 Order, Defendants shared the memo with numerous members of Congress after they demanded access to the legal basis and governing parameters of the boat strikes campaign. *See* ECF No. 72 at 14–19. This, too, rendered the privilege inapplicable.

The Constitution's design dictates this result. "Congress and the President have an ongoing institutional relationship as the 'opposite and rival' political branches established by the Constitution." *Mazars*, 591 U.S. at 866 (citation omitted). Given this antagonism, the executive branch has consistently understood congressional requests for closely held presidential communications as uniquely threatening to the confidentiality interest that animates the presidential communications privilege. As an OLC opinion on the subject explains:

> The White House typically seeks to accommodate congressional requests [for such information] by providing written responses or oral briefings on relevant activities or policies, supplemented sometimes by the production of specific non-privileged documents. . . . The practice of providing written responses and oral briefings instead of . . . internal communications helps preserve the President's ability to obtain full and frank advice from White House staff. This is critical to avoid chilling the candor of White House communications, since the President himself must make decisions relying substantially, if not entirely, on the information and analysis supplied by advisers.

*Congressional Oversight of the White House*, 45 Op. O.L.C. (Jan. 8, 2021) (slip op. at 42–43), https://www.justice.gov/olc/file/1355831/dl (citation modified). It is unsurprising, then, that past

presidents have assumed that they may waive executive privilege by freely sharing confidential White House communications with congressional oversight committees. *See Mazars*, 591 U.S. at 861 (explaining that President Clinton shared notes taken by a White House attorney with a Senate committee only after he "obtained the Senate's concession that he had not waived any privileges").

Here, there can be no doubt that the memo's circulation to members of Congress was inconsistent with maintaining the privilege. The memo was sought and reviewed by members of Congress acting solely in their oversight capacities, including the ranking members of committees with jurisdiction over the military. *See* ECF No. 72 at 14–19. Many expressed deep concerns about the boat strikes' legality before their review of the memo, and, afterwards, they publicly criticized its reasoning in vehement terms—in some cases, calling for its public release and an end to the boat strikes campaign if the memo's reasoning cannot "withstand public scrutiny." *Id*. If the memo contained the sort of closely held "candid, objective, and even blunt or harsh opinions" whose confidentiality must be jealously safeguarded to protect the process of "Presidential decisionmaking," Defendants would not have shared it with their rivals in Congress. *Nixon*, 418 U.S. at 708. Doing so was incompatible with the privilege's purpose and thus abrogated it.

## CONCLUSION

The Court should deny Defendants' motion for summary judgment.

Dated: November 20, 2026
New York, New York

Respectfully submitted,

*<u>/s/ Jeffrey Stein</u>*

Jeffrey Stein
Brett Max Kaufman
Natalie Smith (admitted pro hac vice)
Ashley Gorski
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004

Perry Grossman
NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3347
pgrossman@nyclu.org

Tel: (646) 905-8904
jstein@aclu.org
bkaufman@aclu.org

Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org