**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, and CENTER FOR CONSTITUTIONAL RIGHTS,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE including its component OFFICE OF LEGAL COUNSEL, DEPARTMENT OF STATE, and DEPARTMENT OF DEFENSE,

Defendants.

25 Civ. 10189 (PAE)

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

Of Counsel:

PETER ARONOFF
Assistant United States Attorney

## CONTENTS

ARGUMENT .......... 1

I. Review Necessary to Carry Out Presidential Directives Does Not Waive the Privilege .......... 1

II. Review to Defend the Government in Litigation Does Not Waive the Privilege .......... 2

III. Sharing the Memorandum with Congress Did Not Waive Privilege .......... 3

CONCLUSION .......... 4

# ARGUMENT

## I. Review Necessary to Carry Out Presidential Directives Does Not Waive the Privilege

The government has explained why the presidential communications privilege is not abrogated when protected documents are distributed confidentially within the executive branch to assist the official in providing new, supplemental, or clarifying advice to the President or his advisors (or their staffs), or to aid the official in carrying out a presidential directive to which the privileged document relates. *See* ECF No. 87 at 2-4. Plaintiffs' opposition does not contest the first category, conceding that such review does not abrogate the privilege.

With respect to the second category, plaintiffs argue that the executive branch should create new materials to avoid waiving the privilege. But it would serve no functional purpose to require the executive branch to create new materials merely to avoid a legal rule about waiver—and, of course, creating such materials could also require review. To be sure, as the Court has noted, "there are alternative ways to educate" officials charged with carrying out the President's directives other than sharing the privileged materials provided to advise the President or his advisors. ECF No. 72 at 61. But t whether to confidentially share a privileged document with a limited number of senior staff charged with carrying out the President's directives, or instead to create a new document, should be left in the discretion of the executive branch. In the similar context of attorney-client privilege, confidential sharing of legal advice among those having a need to know its contents is sufficient to maintain the privilege. *See, e.g.*, *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 441-42 (S.D.N.Y. 1995); *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) (in corporate context, "documents subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately"). A similarly protective rule is appropriate here.

## II. Review to Defend the Government in Litigation Does Not Waive the Privilege

Plaintiffs' opposition (Opp. 4-6) advocates a rule that would bar government defense counsel from reviewing the very document that *plaintiffs' counsel* repeatedly cited in their complaint, on pain of waiving the presidential communications privilege.

Plaintiffs' counsel in *Burnley*—including many of the same lawyers in this case—put the OLC Memorandum at issue. *See* Amended Complaint ¶¶ 6, 62. The complaint characterizes what it claims to be the legal theory of the OLC Memorandum (that there is a "non-international armed conflict," *id*. ¶ 6). It then spends an entire section seeking to repudiate that theory by arguing that there is no such conflict. *See id*. ¶¶ 67-79. That argument forms a basis for claiming, in the cause of action, that the deaths were caused by unlawful acts. *Id*. ¶¶ 80-82, 84-85, 88.

Plaintiffs nonetheless now argue that they did not put the Memorandum at issue in *Burnley* (Opp. 5 n.4), noting that the complaint says that "Whatever that secret memorandum states, it cannot render the patently illegal killings lawful." But that is simply a rhetorical expression of disagreement with what the complaint understands to be the Memorandum's legal theory. And whatever plaintiffs claim, the DOJ attorneys themselves believed that reviewing the Memorandum was necessary—indeed, the supervisor of the litigation team believed, in his professional judgment, that it was "essential" for the litigating team to review the Memorandum to "adequately understand the allegations of the *Burnley* complaint" and "defend the interests of the United States" and therefore worked to secure their access to the Memorandum. Declaration of Rodney Patton ¶ 7.[1] Mr. Patton also sought access so that he could "craft[] a defense for the United States," including "evaluating a possible future invocation of the state secrets privilege." *Id*. ¶ 6. Plaintiffs seek to put government defense counsel in an impossible position: either review the Memorandum

[1] The other attorney declarations similarly explain that each attorney sought access to the Memorandum in order to defend the United States.

and risk waiver of privilege, or decline to do so and risk breaching their professional and Rule 11 obligations. *See, e.g.*, *Wurzberg v. Lapid*, No. 92 Civ. 4586 (LBS)(NRB), 1993 WL 362374, at *6 (S.D.N.Y. Sept. 16, 1993) (meeting Rule 11 obligations requires affirmative investigation of relevant facts and law before submitting filings in litigation). And on plaintiffs' theory, litigants can put privileged material at issue in one case to induce a waiver of privilege in another.

The implausibility of plaintiffs' position is demonstrated by their attempts to explain why government counsel's review of the Memorandum in this FOIA action—a step the Court stated it expected would occur before the government filed its summary judgment papers—is somehow distinguishable from the review by the *Burnley* defense team. Opp. 4 n.3. But plaintiffs' theory makes no room for this distinction. Neither set of counsel was within the President's inner circle or advising the President. Both sets of defense counsel were defending the interests of the United States in actions where they believed review of the Memorandum was relevant and necessary.

That there is no case affirmatively rejecting plaintiffs' position (Opp. 4) does not indicate that plaintiffs are correct. It indicates that no litigant has previously advanced—and thus no court has previously rejected—the implausible argument that defense counsel risk waiving an applicable privilege by reviewing a document that plaintiffs themselves put at issue in a pleading.

## III. Sharing the Memorandum with Congress Did Not Waive Privilege

Finally, plaintiffs argue that permitting members of Congress to review the Memorandum in a secure setting waived the privilege, citing an Office of Legal Counsel opinion. Opp. 6. That opinion states that the White House often provides briefing or written responses rather than directly sharing internal communications, which helps "avoid chilling the candor of White House communications." *Congressional Oversight of the White House*, 45 Op. O.L.C. __, at *43 (Jan. 8, 2021). But that expresses a functional concern regarding how the White House may choose to share information with Congress in an oversight environment, not a concession of waiver.

The executive branch has long made clear its position that sharing information in confidence with Congress does not waive privileges: if the "provision of documents and information to Congress, as part of the accommodation process, eliminated the President's ability to assert privilege over . . . documents and information concerning those same communications, then the Executive Branch would be hampered, if not prevented, from engaging in future accommodations" of Congressional requests for information. *Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1, 8 (2007). A narrow interpretation of waiver ensures that "the relevant legal principles . . . encourage, rather than punish, such accommodation by recognizing that Congress's need for such documents is reduced to the extent similar materials have been provided voluntarily as part of the accommodation process." *Id.*; *see also Assertion of Executive Privilege Over Audio Recordings of the Special Counsel's Interviews of the President and His Ghostwriter*, 48 Op. O.L.C. __, at *9–10 (May 15, 2024); *Applicability of Executive Privilege to Presidential Communications with Private Advisers*, 50 Op. O.L.C. __, at *21 (Aug. 10, 2026).

If plaintiffs' position were accepted, "every disclosure to Congress would be tantamount to a waiver of all privileges and [FOIA] exemptions," and "executive agencies would inevitably become more cautious in furnishing sensitive information to the legislative branch—a development at odds with public policy which encourages broad congressional access to governmental information." *Murphy v. Dep't of Army*, 613 F.2d 1151, 1156 (D.C. Cir. 1979). In seeking this single record, plaintiffs ignore the long-run public value in allowing the executive to share information with the people's elected representatives in Congress without risk of waiver.

## CONCLUSION

The government's motion for summary judgment should be granted.

Dated: November 25, 2026
New York, New York

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York

By: */s/ Peter Aronoff*
PETER ARONOFF
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
E-mail: peter.aronoff@usdoj.gov